In the
United States Court of Appeals
For the Seventh Circuit

Nos.  98-4224, 98-4314, 99-1055,
99-1111, 99-1112, and 99-1133

United States of America,

Plaintiff-Appellee,

v.

Nazareth Wilson, et al.,

Defendants-Appellants.

Appeals from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 96 CR 553--George M. Marovich, Judge.

Argued September 25, 2000--Decided January 17, 2001

   Before Flaum, Chief Judge, and Easterbrook and Diane
P. Wood, Circuit Judges.

   Diane P. Wood, Circuit Judge. This case brings
before us the appeals of another group of
defendants whose convictions stemmed from their
activities with the notorious drug conspiracy run
by the Gangster Disciples in Chicago for many
years. The six individuals here--Nazareth Wilson,
Jeffery Hatcher, Jimmie Gholson, Bryan Crenshaw,
Compton Jones, and Roland Tetteh--have jointly
challenged the wiretaps used to collect evidence
that was used against them, the failure of the
government to disclose favorable information to
them that went to the credibility of its main
witness, and the sentencing court's determination
that the drugs at issue were "crack" cocaine and
not a more innocuous form of the drug.
Separately, they have raised other arguments
contesting either their convictions or their
sentences, or both. Although some errors were
present, none requires reversal; we therefore
affirm the judgments.

I
   The indictment in this case, returned in May
1997, followed three earlier indictments returned
in August 1995 against the leadership of the
Gangster Disciples (GD) street gang. The May 1997
indictment charged the same drug distribution
conspiracy as the earlier indictments, but it

added charges arising out of certain events that took place after the original indictments as a result of a power struggle to fill the void left by the indictment of the original 39 leaders. As the facts of the basic conspiracy have already been rehearsed in prior opinions of this court, we see no reason to offer yet another general overview; interested readers may consult the decisions in United States v. Smith, 223 F.3d 554 (7th Cir. 2000), and United States v. Jackson, 207 F.3d 910 (7th Cir. 2000), judgment vacated in part, 121 S.Ct. 376 (2000).

The six defendants here were charged with a variety of drug-related offenses. Wilson pleaded guilty to participation in the drug conspiracy in violation of 21 U.S.C. sec. 846 and was sentenced to 235 months of imprisonment. The jury found Jones guilty on one conspiracy charge, sec. 846, as well as on two counts relating to the use of minors for drug operations, 21 U.S.C. sec.sec. 861(a)(1) and (2), and one for possession with intent to distribute a controlled substance, 21 U.S.C. sec. 841(a)(1). For all this, he received a sentence of 420 months, to be followed by 10 years of supervised release. The jury found Tetteh guilty of violating sec.sec. 846 and 861(a)(1) and (2), and he eventually was sentenced to 292 months of imprisonment and a five-year period of supervised release. Gholson, Hatcher, and Crenshaw were all convicted of engaging in a continuing criminal enterprise in violation of 21 U.S.C. sec. 848(a); in addition, they were all convicted of violating sec.sec. 846 and 861(a)(1) and (2). Hatcher and Crenshaw had an additional conviction for being felons in possession of a firearm, see 18 U.S.C. sec. 922(g), and Crenshaw also was convicted for possession with intent to distribute cocaine, 21 U.S.C. sec. 841(a)(1), and for use of a communication facility in the commission of a narcotic conspiracy, 21 U.S.C. sec. 843(b). Because of the sec. 848(a) convictions, all three received sentences of life imprisonment, to be followed (to the extent it made any sense) by supervised release for 10 years.

Although this case involves new defendants, several of the issues they raise were resolved in Jackson and Smith. (These issues were unaffected by the Supreme Court's order that we reconsider Jackson in light of its decision in Apprendi v. New Jersey, 530 U.S. 466 (2000).) At oral argument, the appellants urged us to reconsider Jackson, but we decline to do so. The defendants in Jackson vigorously sought a rehearing en banc, which no judge on this court found to be warranted. Thus, we now simply reiterate that: (1) the order authorizing the wiretap of Larry Hoover's conversations at the Vienna Correctional

Center (located in southern Illinois) was within the jurisdiction of the federal district court in the Northern District of Illinois because the conversations were first heard by human ears in Chicago, Jackson, 207 F.3d at 914-15; (2) the statute authorizing "roving surveillance" of telephone facilities used by certain persons, 18 U.S.C. sec. 2518(11), does not violate the Fourth Amendment's requirement of particularity of description of the place to be searched, Jackson, 207 F.3d at 914; and (3) the government's failure to seal the surveillance tapes immediately was not grounds for their exclusion, id. at 918. In addition, for the reasons given in Smith, the telephone recordings made at June's Shrimp on the Nine restaurant on October 15, 1994, were authorized by the 30-day interception order issued on September 15, 1994. Smith, 223 F.3d at 575.

   Several other issues warrant only brief mention. The defendants were sentenced based on the sentencing guidelines applicable to "crack cocaine," U.S.S.G. sec. 2D1.1(c)(D)." The defendants jointly argue that the court erred in determining that the substance being bought and sold was crack cocaine. We find that the government proved by a preponderance of the evidence that the substance being sold was crack cocaine. We have consistently held that those who use, sell, or buy drugs are the "real experts on what is crack." United States v. Hardin, 209 F.3d 652, 661 (7th Cir. 2000); United States v. Griffin, 194 F.3d 808, 829 (7th Cir. 1999). On the audio recordings, several gang members speak of "cooking" the cocaine. The police testified to seizures of small bags containing a lumpy, rocklike substance. Against this showing, the defendants offered nothing to suggest that the conclusions of the gang members and the police officers might have been mistaken. Looking at the entire sentencing record, we see no clear error in the district court's substance determination. See United States v. Abdul, 122 F.3d 477, 479-80 (7th Cir. 1997). Additionally, the district court's method for determining the drug quantity involved in the conspiracy was in line with our decision in Smith, and not clearly erroneous. Smith, 223 F.3d at 568-69.

   We turn then to the remaining common issue the defendants raise, which relates to the government's alleged failure to disclose evidence that was favorable to them, in violation of Brady v. Maryland, 373 U.S. 83 (1963). Presley Patterson was a former GD governor who first became a government mole and later entered the federal witness protection program. As a key witness for the government, Patterson testified that he had not tested positive for drugs while

in the witness protection program. But a month after the jury verdict, the prosecutors received a memorandum from the Department of Justice Office of Enforcement Operations stating that Patterson had been terminated from the witness protection program based on a United States Marshal's Service report that Patterson had tested positive for marijuana in three drug tests conducted prior to his court testimony. The prosecutors immediately disclosed this information to the defense. Based upon the government's failure to disclose this information during trial, the defendants moved for a new trial. The district court denied their motion for a new trial; we review that decision for abuse of discretion. United States v. Asher, 178 F.3d 486, 496 (7th Cir. 1999).

Under Brady v. Maryland, the government may not withhold evidence that is favorable to the defense. 373 U.S. at 87. Brady requires a new trial if the evidence at issue is (1) favorable, (2) suppressed, and (3) material to the defense. Id. Contrary to the defendants' assertion in their brief that the government must prove these points, it is in fact the defendants' burden to do so. See United States v. Dimas, 3 F.3d 1015, 1017 (7th Cir. 1993); United States v. White, 970 F.2d 328, 337 (7th Cir. 1992).

The government admitted before the district court that the evidence would have been favorable to the defense because it potentially undermined Patterson's credibility. It is also clear that the U.S. Marshal's Service received notice of the failed drug tests well in advance of trial. The defendants apparently concede that the prosecutors lacked actual knowledge of this damaging information, but they urge that the knowledge of the Marshal's Service should be imputed to the prosecutors. In so arguing, they rely on Kyles v. Whitley, 514 U.S. 419, 437 (1995), and Giglio v. United States, 405 U.S. 150, 153-54 (1972), which hold that it is proper to impute to the prosecutor's office facts that are known to the police and other members of the investigation team. As Kyles put it, "the individual prosecutor has a duty to learn of any favorable evidence known to others acting on the government's behalf in the case, including the police." 514 U.S. at 437. See United States v. Morris, 80 F.3d 1151, 1169-70 (7th Cir. 1996) (knowledge of evidence is imputed to the prosecutors only if it lies within an agency that is "part of the team that investigated this case or participated in its prosecution"). We agree with the defendants that such imputation is proper in these circumstances; it is impossible to say in good conscience that the U.S. Marshal's Service was not "part of the team" that was

participating in the prosecution, even if the role of the Marshal's Service was to keep the defendants in custody rather than to go out on the streets and collect evidence. (As United States v. Henry, 447 U.S. 264 (1980), illustrates, potentially useful information may come into the possession of the custodian, whether or not that information is ultimately admissible.)

Nonetheless, more needs to be shown before the defendants can prevail on their Brady argument. The defendants must prove that the undisclosed information was material, which means that it was evidence that (if disclosed in a timely way) would have created a reasonable probability of a different result. Kyles, 514 U.S. at 434. The "reasonable probability" does not mean something greater than 50%; the test instead requires us to decide "whether in . . . [the] absence [of the evidence, the defendants] received a fair trial, understood as a trial resulting in a verdict worthy of confidence." Id.; see also United States v. Bagley, 473 U.S. 667, 678 (1985). On the one hand, knowing that Patterson was lying about the drug tests might have led the jury reasonably to suppose that he was lying about the criminal activities of the defendants as well. See Crivens v. Roth, 172 F.3d 991, 998-99 (7th Cir. 1999). But we cannot assume that the prosecutors would have done nothing to address this revelation, had it come to light at trial. As the district court speculated, if the prosecution and the defense had known about the drug test results, the prosecutors probably would have asked about the drug tests and Patterson would have told the truth. See Dimas, 3 F.3d at 1019 n.3 (the relevant question is "whether the result would have changed if the prosecutors disclosed the evidence at the time, not whether the outcome would differ if the case were tried today"). In that case, the evidence would not have exposed perjury; it would have only been cumulative of the extensive evidence of Patterson's drug use, and therefore not material under Brady. See United States v. Dweck, 913 F.2d 365, 371-72 (7th Cir. 1990). Even if we reject the district court's hypothesis and assume that Patterson would have lied about the drug use, it was not an abuse of discretion for the district court to find that Patterson had already been so thoroughly impeached that additional impeachment evidence would have made no difference. See United States v. Williams, 81 F.3d 1434, 1438-39 (7th Cir. 1996). We therefore reject this joint argument as well, and turn to the issues on appeal urged by the individual defendants.

II

## A.  Hatcher, Gholson and Crenshaw

Defendants Hatcher, Gholson and Crenshaw were convicted of participating in a continuing criminal enterprise (CCE) and sentenced to imprisonment for life. 21 U.S.C. sec. 848. They claim that their convictions on the CCE charges cannot stand in light of the Supreme Court's decision in Richardson v. United States, 526 U.S. 813 (1999). Richardson held that a CCE conviction can be sustained only if the jury unanimously agreed on each of the specific predicate acts required to show the existence of the CCE. Hatcher, Gholson and Crenshaw correctly note that the jury was not instructed that it needed to unanimously agree on the predicate offenses for the conviction. They urge that such a failure requires reversal of the CCE convictions. Although the government initially confessed error on this point, it has since thought better of the matter (after prompting from the bench at oral argument) and it now argues that the jury did convict on two predicate offenses for each defendant, thus providing a proper basis for the CCE convictions and making the jury instruction error harmless. Neder v. United States, 527 U.S. 1 (1999).

Even if the government had not amended its argument, this court retains an independent responsibility to evaluate confessions of error for legal correctness. United States v. Locklear, 97 F.3d 196, 198 (7th Cir. 1996). Our review of the law and the record convinces us that the Richardson error was harmless. Count Two alleged the following substantive offenses as CCE predicates: (1) possession with intent to distribute and distribution of controlled substances, in violation of 21 U.S.C. sec. 841(a)(1); (2) use of telephones to facilitate the unlawful possession and distribution of controlled substances, in violation of 21 U.S.C. sec. 843(b); (3) use of minors to facilitate the narcotics conspiracy, in violation of 21 U.S.C. sec. 861(a)(1); and, (4) use of minors to assist in avoiding detection and apprehension for engaging in the narcotics conspiracy, in violation of sec. 861(a)(2). All three of the defendants were also substantively charged in Count Three with the use of minors in furtherance of the narcotics conspiracy and in Count Four with the use of minors to avoid detection and apprehension; all three were convicted by the jury on those two counts.

The critical issue for our harmless-error analysis is how many predicate offenses are required for a CCE conviction: two or three? This is not a matter on which the circuits are in agreement. Some commonly define "continuing

series of violations" as three or more offenses. United States v. Sinito, 723 F.2d 1250, 1261 (6th Cir. 1983); United States v. Valenzuela, 596 F.2d 1361, 1365 (9th Cir. 1979); United States v. Michel, 588 F.2d 986, 1000 & n.15 (5th Cir. 1979). Nonetheless, this court has held that a CCE charge may be established by two or more predicate offenses, even when the jury instructions require three. See United States v. Baker, 905 F.2d 1100, 1104 (7th Cir. 1990). Because the jury unanimously agreed that each defendant had committed two of the predicate offenses with which he was charged (i.e., use of minor to further conspiracy and use of minor to avoid detection), the omission of the instruction was a harmless error and the CCE convictions stand. See Smith, 223 F.3d at 567-68; Jackson, 207 F.3d at 919; Lanier v. United States, 205 F.3d 958, 964-65 (7th Cir. 2000).

B.  Gholson

Gholson was convicted and sentenced on the CCE count. The applicable statute prescribes a mandatory term of life imprisonment for those convicted of a CCE if "such person is . . . one of several such principal administrators, organizers, or leaders" and the CCE sold a certain quantity of drugs or reaped a certain amount of receipts. 21 U.S.C. sec. 848(b). Gholson challenges the district court's determination at sentencing that he was a "principal"--a finding that we review only for clear error. See United States v. Brown, 900 F.2d 1098, 1101 (7th Cir. 1990).

Gholson was the top unincarcerated GD member for one month and he sat as a board member from April to September 1996. A seat on the Board of Directors was the highest attainable position, subordinate only to Larry Hoover. This court has concluded in the past that individuals holding the rank of Governor were "principals" for sentencing purposes, see Jackson, 207 F.3d at 919. The district court's finding that board members, who ranked above Governors, were also principals is therefore unexceptional. The sentencing judge recognized that Gholson's "leadership may have been relatively brief," but the judge still decided to sentence Gholson to life imprisonment. Gholson has cited no case law that makes it legal error to fail to discount a principal's sentence if his period of leadership was brief. The district court's determination that Gholson was a "principal" for purposes of CCE sentencing was not clearly erroneous.

Even if Gholson was not a principal, he could still have been sentenced to life based on the

CCE charge. The base offense level for the CCE charge was 42 (base offense level of 38 based on the quantity of drugs, sec. 2D1.1(c)(1), plus four, sec. 2D1.5). When we add two levels for possession of a firearm, sec. 2D1.1(b)(1), we end up at level 44, which carries with it a mandatory life sentence. See U.S.S.G. Ch. 5, Pt. A. Similarly, Gholson could have been sentenced to life for the conspiracy charge. The district court found that Gholson's sentencing level for the conspiracy was at least 45: starting out with a base offense level of 38 based on the amount of drugs involved in the conspiracy, sec. 2D1.1(c)(1), adding one point for use of minors, sec. 3B1.4, adding two points for possession of a firearm, sec. 2D1.1 (b)(1), and adding four points for leadership in the conspiracy, sec. 3B1.1(a). Again, a life sentence is required for any sentencing level over 43. U.S.S.G. Ch. 5, Pt. A. Thus any error the court may have made in determining that Gholson was a "principal" would have been harmless.


   C.   Hatcher

   Hatcher challenges the introduction of certain evidence at trial. The government presented evidence that Hatcher had been indicted in the first round of GD indictments in August 1995, had been released on bond, and then failed to appear at a hearing on a motion to revoke his bond. A bench warrant was issued for his arrest and he was later apprehended after a police chase ended in a crash of his van, in which the police found 36 "gem packs" of crack. (The term "gem pack" refers, in the drug trade, to a small translucent blue plastic bag used to package cocaine base. See, e.g., United States v. Robinson, 30 F.3d 774, 780 n.1 (7th Cir. 1994).) The district court's admission of this evidence is reviewed for abuse of discretion. United States v. Hunter, 145 F.3d 946, 951 (7th Cir. 1998).

   The probative value of evidence of flight depends on the strength of the inferences that can be drawn from the flight to actual guilt of the crime charged. United States v. Rodriguez, 53 F.3d 1439, 1451 (7th Cir. 1995). Hatcher argues that he was running not to avoid prosecution, but to avoid pre-trial detention while he awaited prosecution. We fail to see how the latter motive is any less probative of guilt than the former. His bond was going to be revoked because of his continuing involvement in the drug conspiracy. It was reasonable for the jury to infer guilt of drug crimes from the fact that he ran from law enforcement personnel because he realized that they wanted to revoke his bond because of his involvement in drug crimes.

Hatcher also challenges the evidence of the drugs found in his van. He argues that because the conspiracy charged in the indictment ended six months before the drugs were found, the evidence is irrelevant. See United States v. Betts, 16 F.3d 748, 758 (7th Cir. 1994) (discovery of drugs 14 months after conspiracy had ended had no probative value in establishing defendant's knowledge and intent regarding the conspiracy). But the part of the conspiracy charged in the indictment here necessarily had to end the day of the indictment--Hatcher makes no attempt to establish that the drug conspiracy itself had actually ended. The district court properly exercised its discretion in admitting the evidence of flight.

Finally, Hatcher challenges a reference to George Ogden made in the prosecutor's closing statement. During trial, the prosecution alleged that 13-year old Ogden had been used by the gang leaders to engage the police in a firefight to divert attention from a secret GD meeting. The court refused to allow testimony stating that Ogden was the shooter and instead permitted only statements indicating that Ogden ran from the alley following the firefight. In the closing argument, however, the prosecutor referred to Ogden as the shooter. Hatcher moved for a new trial on the basis of prosecutorial misconduct. The district court denied the motion, and our review is once again for abuse of discretion. United States v. Williams, 81 F.3d 1434, 1438 (7th Cir. 1996). The district court found that the prosecutor's comments had not "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Donnelly v. DeChristoforo, 416 U.S. 637 (1974). The judge told the jury, specifically in regard to this statement, that it was free to disregard any jury arguments that were not supported by the evidence. We assume that juries follow the instructions they are given. United States v. Linwood, 142 F.3d 418, 426 (7th Cir. 1998). The judge's cautionary words, coupled with the fact that this was a single remark from the prosecutor, satisfy us that the court's decision to deny the new trial was not an abuse of discretion.

D. Jones

During the trial, defendant Jones moved for a severance from Hatcher on the ground that Hatcher's theory of defense (that the GD's main purpose was community development) was antagonistic to Jones's defense (that the narcotics conspiracy was confined to the GD

leadership). The district court denied this motion to sever; we review this decision for abuse of discretion. See Smith, 223 F.3d at 573. The district court should only grant a severance under Rule 14 of the Federal Rules of Criminal Procedure when there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants. Zafiro v. United States, 506 U.S. 534, 539 (1993). In order to successfully appeal the denial of a severance motion, the defendant must establish actual prejudice resulting from the refusal to sever. United States v. Peters, 791 F.2d 1270, 1287 (7th Cir. 1986).

We conclude that the district court's denial of Jones's motion to sever was not an abuse of discretion. Hatcher's defense was not necessarily antagonistic to Jones's defense. It was possible that the main purpose of the GD gang was community development, but that there was a small group in leadership who were engaged in drug trafficking. And even if the defenses were antagonistic, "mutually antagonistic defenses are not prejudicial per se." Smith, 223 F.3d at 574, citing Zafiro, 506 U.S. at 538. Moreover, Jones has failed to establish any prejudice resulting from the court's refusal to sever.

Jones also moved for a mistrial based on the court's treatment of witness Larry Hoover and his testimony. Hoover gave direct testimony and then belligerently refused to answer questions on cross. After admonishing Hoover for his failure to follow the rules of the trial, the district court ordered his testimony stricken. Jones moved for a mistrial, arguing that the jury would be improperly biased by Hoover's rude conduct and manner. The district court denied this motion and gave proper instructions to the jury regarding their treatment of Hoover's testimony and actions. The court's denial of Jones's motion for a mistrial is reviewed for abuse of discretion. United States v. Roe, 210 F.3d 741, 747 (7th Cir. 2000). Jones does not dispute the district court's confidence in the jury's ability to follow these instructions; nor does he deny that Hoover's direct testimony actually helped his case. Jones has given us no basis for finding an abuse of discretion in the court's refusal to grant a mistrial.

Like Hatcher, Jones also challenges the district court's admission of certain evidence regarding prior bad acts. At trial, a police officer testified that five years earlier he had pulled over a car driven by Jones and had confiscated $25,000 from the car. Jones told the police officer that he had been "doing some pickups for a friend." Jones argued that this evidence was

inadmissible under Federal Rule of Criminal Procedure 404(b) as evidence presented solely to show a propensity to commit crime. The government argued, and the district court agreed, that the jury could reasonably infer that the money involved was drug proceeds, thus linking Jones to the drug conspiracy. Considering the fact that the incident occurred within the time frame of the alleged conspiracy, as well as other evidence of Jones's role, we find no abuse of discretion here.

Additionally, Cook County State's Attorney's Office Investigator Maurice Macklin testified that in 1996, he had a run-in with Jones while interviewing one of Jones's neighbors, Angela Wright, on an unrelated matter. Jones first admonished Wright that she "better not tell him nothing about me." Jones then drew his gun and threatened to shoot both Wright and Macklin. Eight to ten other people then began to approach Macklin. Jones did not object to this testimony at trial, which means that we review the matter now only for plain error. Stringel v. Methodist Hospital of Ind., Inc., 89 F.3d 415, 421 (7th Cir. 1996). It was not plain error for the district court to admit this evidence--it showed that Jones was an authority figure in the neighborhood. Other evidence had established that Jones was the regent in the area around 73rd and Greenwood, lived on that block, and conducted drug sales and gang meetings there.

III

It may seem harsh for the standard of review to make as significant a difference in the outcome of a case as it may have done in these appeals, but a more global perspective shows that such a characterization would overlook the broader interests that these standards serve. A standard like abuse of discretion or clear error reflects the allocation of responsibilities between the first instance court and the appellate court. The plain-error standard, which we are required to apply when a district court has not been given the first opportunity to correct alleged mistakes, see Federal Rules of Criminal Procedure 52(b), strikes a balance among the proper functioning of the adversary system, efficiency in managing litigation, and the demands of justice. The law, the record, and these standards require us to Affirm the judgments of the district court in the six appeals before us.