UNPUBLISHED ORDER
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued February 24, 2006
Decided July 18, 2006

**Before**

Hon. WILLIAM J. BAUER, *Circuit Judge*

Hon. RICHARD A. POSNER, *Circuit Judge*

Hon. ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 04-2762

SHERMAN MOORE,
　　　　　*Petitioner-Appellant,*

　　v.

UNITED STATES OF AMERICA,
　　　　　*Respondent-Appellee.*

Appeal from the United States District
Court for the Northern District of
Illinois, Eastern Division.

No. 03 C 3806

Paul E. Plunkett,
*Judge.*

**ORDER**

　　A jury convicted Sherman Moore of multiple narcotics-related offenses and of participating in a continuing criminal enterprise (CCE) in violation of 21 U.S.C. § 848, as a leader of the Gangster Disciples street gang. The district court imposed three concurrent terms of imprisonment—one twenty-year term and two life terms—and we affirmed his convictions and sentences on direct appeal. *See United States v. Smith*, 223 F.3d 554 (7th Cir. 2000). Moore subsequently filed a motion under 28 U.S.C. § 2255, claiming that his trial and appellate counsel were ineffective. The district court denied his motion. We granted a certificate of appealability on the issue of whether Moore's counsel was ineffective for failing to raise certain challenges at trial. We now affirm.

# I. BACKGROUND

The facts surrounding the Gangster Disciples' activities have appeared in numerous decisions by this court, *see e.g., Smith*, 223 F.3d at 560-61; *United States v. Jackson*, 207 F.3d 910, 913 (7th Cir. 2000); *United States v. Irwin*, 149 F.3d 565, 566-68 (7th Cir. 1998), and are set forth only as necessary to give context to Moore's collateral attack. The Gangster Disciples, led by Larry Hoover, was a gang organized along territorial and hierarchical lines; below Hoover and his Board of Directors were Governors and Assistant Governors, each of whom were responsible for several Regents, who in turn were responsible for several coordinators and soldiers. The leadership oversaw the coordination of the gang's drug sales efforts, and divided the gang's Chicago-area market by territories. Governors supervised their assigned territories and, along with Regents, often served as drug suppliers for those beneath them. In late 1992, Moore was promoted from a Regent to a Governor and his new position was reflected on "The List," an official document that laid out the Gangster Disciples' hierarchy and membership.

The government began investigating the Gangster Disciples and their drug distribution activities in 1989. In 1993 the government obtained a warrant authorizing wiretap surveillance of conversations between Hoover and his visitors at the Vienna Correctional Center in Vienna, Illinois. The district court granted the last extension of this warrant on December 3, 1993 and the warrant expired on January 2, 1994. But these recordings, known as the "Vienna tapes," were not sealed until February 4, 1994—32 days after the warrant expired.

In 1995, Moore, along with many of his fellow gang leaders, was indicted on several drug trafficking offenses. During Moore's trial, the government introduced "The List" on which Moore was named as a Governor, and used the Vienna tapes to lay the foundation for admission of this evidence. In addition, the government presented the following evidence: in the spring of 1992 or 1993 Moore bought a half kilogram of cocaine from a Gangster Disciple member; in 1993 Moore began dressing better, drove a 1986 Cadillac convertible, took several cruises, and was photographed wearing a tuxedo; between 1990 and 1993 Moore discussed narcotics prices with a government informant and told an undercover officer that he was interested in the secret compartments for hiding drugs that the officer had in his car; in 1993, Moore ordered the disciplinary beating of a Regent; and in 1994, he demanded money for a Gangster Disciple money-laundering scheme from a non-Gangster Disciple drug dealer from whom he also attempted to buy two kilograms of cocaine.

At trial, Moore's defense counsel unsuccessfully moved to exclude portions of the Vienna tapes as hearsay that did not fall within the co-conspirator exception. Unlike counsel for many of Moore's co-defendants, however, Moore's counsel did not

attempt to suppress the tapes based on the government's failure to seal the evidence immediately upon expiration of the warrant as required by 18 U.S.C. § 2518(8)(a). In the end, however, the district court denied every one of the co-defendants' motions to suppress the Vienna tapes. The jury found Moore guilty of engaging in a narcotics conspiracy, engaging in a continuing criminal enterprise to distribute narcotics, using minors to distribute drugs and avoid detection (two counts), and distributing cocaine and crack (three counts). The district court sentenced Moore to two life terms and twenty years' imprisonment to run concurrently.

We affirmed Moore's convictions on direct appeal, holding, in relevant part, that the principal leader, drug quantities, and drug value findings that are prerequisites for imposing a life sentence under 21 U.S.C. § 848(b), are sentencing factors that need not be proven to a jury beyond a reasonable doubt. *Smith*, 223 F.3d at 560-61. We also found that the ruling on the drug quantities underlying the mandatory life sentences were not clearly erroneous. *Id.* While this decision was still pending, however, the Supreme Court decided *Apprendi v. New Jersey*, 530 U.S. 466 (2000). Moore's counsel did not seek leave to file a supplemental brief challenging Moore's sentence in light of that decision and the Supreme Court denied Moore's petition for writ of certiorari on June 28, 2002.

On May 30, 2003, Moore filed a motion pursuant to 28 U.S.C. § 2255 to vacate his conviction and sentence. The district court denied this motion and his motion for reconsideration but granted his request for a certificate of appealability to argue whether his counsel was constitutionally ineffective in failing to seek suppression of the Vienna tapes. We then granted Moore's motion to expand his certificate of appealability to also argue whether his appellate counsel was constitutionally ineffective in failing to attack his sentence under *Apprendi*.

## II. ANALYSIS

We review Moore's ineffective assistance of counsel claims under the familiar two-prong test laid out in *Strickland v. Washington*, 466 U.S. 668 (1984), which requires proof that counsel's performance fell below minimum professional standards and that this deficient performance "prejudiced" the defendant. *Id.* at 687. In order to demonstrate "prejudice," a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694.

Moore first argues that his trial counsel was ineffective because, unlike his co-defendants' counsel, his counsel did not seek to suppress the Vienna tapes on the grounds that they were sealed late in violation of 18 U.S.C. § 2518(8)(a). But failure to raise a losing argument does not constitute ineffective assistance of counsel. *See*

*Whitehead v. Cowan*, 263 F.3d 708, 731 (7th Cir. 2001). Here, because the district court denied every motion to suppress the Vienna tapes each time one of Moore's co-defendants raised it, the court surely would have denied Moore's motion as well. And, as Moore acknowledges, we have upheld those denials. *See United States v. Jackson*, 207 F.3d 910, 918 (7th Cir. 2000) (reh'g and reh'g en banc denied) (accepting the government's explanation for the delay in sealing the Vienna tapes); *see also United States v. Wilson*, 237 F.3d 827, 831 (7th Cir. 2001) (reh'g and reh'g en banc denied; cert. denied) (noting that the *Jackson* defendants "vigorously sought a rehearing *en banc,* which no judge on this court found to be warranted"); *United States v. Hoover,* 246 F.3d 1054, 1057 (7th Cir. 2001) (reh'g and reh'g en banc denied; cert. denied) (same).

Similarly, we also reject Moore's argument that his appellate counsel was ineffective for failing to argue that the government forfeited its opportunity to establish a satisfactory explanation for its delay in sealing the Vienna tapes. Although we noted on direct appeal that the government forfeited its alternative explanation for its sealing delay, we accepted its primary argument. *See Jackson*, 207 F.3d at 915-19. Thus, Moore's case was not prejudiced by his appellate counsel's alleged deficient performance.

Moore next argues that his appellate counsel should have challenged the constitutionality of all of his sentences under *Apprendi*, decided while his direct appeal was pending. *Apprendi* held that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490. Moore maintains that because the jury made no specific findings regarding certain sentencing factors, his sentence violated his Sixth Amendment right to a jury trial. We disagree.

The jury found Moore guilty of participating in a CCE under 21 U.S.C. § 848(a), for which the sentencing range is 20 years to life. Under 21 U.S.C. § 848(b), the district court was required to sentence Moore at the highest end of that range—life—once it found by a preponderance of the evidence that he was an organizer or leader of a CCE and that the government proved the threshold drug sales.[1] As we explained in Moore's direct appeal, life is still considered a lawful sentence under § 848(a). Thus, *Apprendi* is inapplicable in his case. *See Smith*, 223 F.3d at 566; *see also United States v. Souffront*, 338 F.3d 809, 832 (7th Cir. 2003)

---

[1] The district court determined that Moore met the requirements of 21 U.S.C. § 848(b) because his role as a Governor in the Gangster Disciples qualified him as an organizer or leader of the CCE and because the government proved that the Gangster Disciples sold between $73 million and $109.5 million of cocaine annually.

("*Apprendi* does not affect or alter calculations of relevant conduct or other guideline determinations for sentences that fall within the statutory maximum."); *United States v. Rivera*, 282 F.3d 74, 77 (2d Cir. 2000) (reasoning that where a defendant's "life sentence did not exceed the statutory maximum applicable to the CCE count, the fact that the district court relied on judicial findings . . . to increase his sentence is irrelevant"); *Hoover*, 246 F.3d at 1058 (same). Moreover, any error the district court might have made in sentencing Moore on the other counts is harmless because the sentences in those counts could not have affected his life sentence. *United States v. Feinberg*, 89 F.3d 333, 341 (7th Cir. 1996). Thus, because any *Apprendi* challenge to Moore's sentence would have been futile, counsel's failure to raise the claim did not prejudice Moore's case and therefore did not constitute ineffective assistance of counsel.

AFFIRMED.