NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit
Chicago, Illinois 60604**

Argued March 4, 2008
Decided April 15, 2008

**Before**

RICHARD D. CUDAHY, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

TERENCE T. EVANS, *Circuit Judge*

No. 06-3993

| | |
|---|---|
| ROBERT WHITE, | Appeal from the United States District |
| *Petitioner-Appellant*, | Court for the Northern District of Illinois, Eastern Division. |
| *v.* | |
| | No. 04 C 7616 |
| UNITED STATES OF AMERICA, | |
| *Respondent-Appellee*. | George W. Lindberg, *Judge*. |

**O R D E R**

Robert White moved to vacate his convictions for drug-related offenses, *see* 28 U.S.C. § 2255, claiming that his lawyer was ineffective because he counseled White to plead guilty instead of seeking dismissal of the indictment for a purported violation of the Speedy Trial Act of 1974, 18 U.S.C. §§ 3161-74. The district court assumed that the Act was violated, but denied White's motion on the ground that he did not demonstrate that he was prejudiced by the attorney's failure to raise the issue. Whether the court's prejudice analysis comports with *Hill v. Lockhart*, 474 U.S. 52 (1985), is a question that we have not addressed, so we granted White's request for a certificate of appealability. After full review, however, we conclude that we need not reach the issue of prejudice.

We instead hold that White did not prove that a statutory speedy-trial violation occurred, and for that reason his lawyer was not ineffective for failing to raise the point in the district court.

On February 8, 2001, White was indicted on three counts: distributing crack, *see* 21 U.S.C. § 841(a)(1); using and carrying a firearm during a drug trafficking crime, *see* 18 U.S.C. § 924(c); and possessing a firearm after being convicted of a felony, *see id.* § 922(g)(1). As relevant here, the Speedy Trial Act limits the time to trial to 70 nonexcludable days, 18 U.S.C. § 3161(c)(1), and that clock began to run the day after White's indictment, *see id.*; *United States v. Parker*, 508 F.3d 434, 438-39 (7th Cir. 2007).

Numerous delays plagued White's case. In April 2001 his first appointed attorney moved to withdraw. Later that month Ronald J. Clark took over White's representation. As soon as he entered his appearance, Clark told the district court that he and the government were seeking a psychological evaluation of White. Clark represented that White was taking psychiatric medication and seemed to be paranoid or schizophrenic. The court thus ordered a competency examination. *See* 18 U.S.C. § 4241. After receiving the results of the examination, the court found, on October 10, 2001, that White was not competent to stand trial, and ordered that he be committed for treatment. *See id.* § 4241(d). On approximately March 8, 2002, doctors at the Federal Medical Center in Butner, North Carolina, issued a second report concluding that White was successfully treated and was now competent to proceed with his case. The district court accepted that conclusion and on May 15 issued an order finding White competent to be tried. *See id.* § 4241(e). At this point 462 calendar days had elapsed since White's indictment.

But then on June 24, 2002, the district court ordered a second psychological examination, this time to determine if White was sane when the crimes alleged in the indictment were committed. *See* 18 U.S.C. § 4242. On October 10, doctors at Butner issued their opinion that he was sane. Two months of inactivity then passed before White sent a letter to the court in December saying that he no longer wanted Clark to represent him. The court construed this letter as a motion for new counsel and set a hearing date in January 2003, but the hearing never occurred, and White's request was not granted. Instead, White's change-of-plea hearing on April 24, 2003, was the next activity in the case. At this point 806 calendar days had elapsed since White's indictment.

At the change-of-plea hearing, attorney Clark told the district court that he and the prosecutor had struggled to reach a satisfactory plea agreement because White felt that his sentence would be too high under all of their various proposals. The government had even proposed dropping the § 924(c) count, which carried a 60-month consecutive sentence. White had earlier rejected a written agreement including this term, but after talking with Clark that day, he changed his mind and agreed to plead guilty to the drug charge and the § 922(g) count in exchange for dismissal of the § 924(c) count. During the plea colloquy White said that several years earlier he was hospitalized for eight or nine months for psychological problems. Clark then commented that at times during their conversations White had not been "lucid," but still the lawyer believed that White understood the charges and was competent to plead guilty. The district court then found White competent to plead guilty and questioned him about his understanding of the charges and the rights he was waiving.

The district court later sentenced White to 292 months' imprisonment on the drug charge and 120 months' imprisonment on the § 922(g) count, to be served concurrently. White did not appeal. Instead, he filed this § 2255 action. As relevant here, White claimed that attorney Clark had been ineffective in not moving to dismiss the indictment on statutory speedy-trial grounds. White argued that a motion to dismiss the indictment would have been successful since, by his count, the 70-day time-to-trial clock had run out before he pleaded guilty, *see* 18 U.S.C. §§ 3161(c)(1), 3162(a)(2), and he averred that he would not have pleaded guilty if Clark had told him about this speedy-trial violation. Consequently, White continued, counsel's deficient performance had rendered his guilty pleas involuntary.

The district court ordered the government to respond to White's motion. The government did so but did not mention the 70-day speedy-trial clock or Clark's failure to move for dismissal on speedy-trial grounds. That omission prompted the district court to order the government to supplement its response with a discussion of White's "contention that he was denied effective assistance of counsel because trial counsel failed to object to the delay between defendant's indictment and guilty plea." Four months later, the government finally filed its supplemental response. This time the government asserted in a single paragraph without citing any authority that fewer than 70 nonexcludable days had elapsed before White pleaded guilty. The government attached an affidavit from attorney Clark, who addressed White's other contentions about his performance but said nothing about the speedy-trial issue.

The district court was not satisfied. After noting that White's § 2255 motion had already been pending for almost a year, the court described the speedy-trial question as "factually complex" and opined that a review of the docket sheet in the criminal case suggested that the 70-day limit was exceeded. Nonetheless, the court continued, the government had again filed a response that "did not adequately address whether petitioner was denied effective assistance of counsel because counsel failed to raise a speedy trial objection." For this reason, the court continued, it was appointing counsel for White and ordering "yet another round of briefing" so that it could "get the information" necessary to resolve White's motion. The court specifically directed the parties to include in their briefs a discussion of "the purpose for each continuance in the criminal case, whether the time was excluded, and the basis for each exclusion of time (providing supporting documentation where appropriate)." Unfortunately, White did not comply fully with this directive, and the government did not comply at all.

White's new attorney (who also represents him here) did submit a memorandum detailing four periods of time totaling 198 days that counsel argued were not excludable for speedy-trial purposes. Those four periods were as follows: March 1, 2002, through March 5, 2002 (5 days); May 2, 2002, through May 14, 2002 (13 days); August 13, 2002, through November 12, 2002 (92 days); and January 9, 2003, through April 6, 2003 (88 days). As to the last of these periods, the district court had entered a *nunc pro tunc* order on April 7 excluding under § 3161(h)(8) the entire interval from January 8 through April 24. Counsel argued that this "ends of justice" exclusion was ineffectual because continuances under § 3161(h)(8) cannot be granted retroactively. *See Zedner v. United States*, 547 U.S. 489, 506-507 (2006); *United States v. Tibboel*, 753 F.2d 608, 611 (7th Cir. 1985). But counsel did not supply the district court with transcripts of the status hearing that preceded this period of delay, so it is impossible to know whether the trial judge gave oral reasons for the continuance. Nor did counsel evaluate whether another exclusion under § 3161(h) might not have encompassed the same period. Nonetheless, counsel concluded that a statutory violation had occurred. White's attorney also represented that he had questioned Clark and learned that Clark had overlooked the violation. Had he known about the violation, Clark purportedly told White's attorney, he would have advised White of his right to seek dismissal of the indictment and would have moved for a dismissal with prejudice unless otherwise instructed.

For its part the government did not contest (or even acknowledge) White's calculations; the government said nothing at all about excludable delay or whether the 70-day clock had run out before White pleaded guilty. Instead the government asserted that Clark probably had "strategic reasons" for not moving to dismiss, even though that

contention contradicted the representations Clark had made to White's new attorney. The government argued further that White could not have been prejudiced by the failure to object since the trial court could have dismissed the indictment without prejudice. The government, though, cited no authority for its prejudice analysis.

The district court denied White's § 2255 motion. The court noted that the government did not dispute White's contention that the 70-day clock had run, and thus the court assumed the existence of a speedy-trial violation. The court concluded, however, that Clark had not rendered ineffective assistance when he failed to move for dismissal. The court accepted the government's view that White could not show that counsel's inaction had prejudiced him, as required under *Strickland v. Washington*, 466 U.S. 668 (1984), because the court would have met a speedy-trial objection by dismissing the indictment without prejudice, thus permitting the government to seek a new indictment containing the exact same charges. *See* 18 U.S.C. § 3162(a)(1) (stating that trial court must dismiss indictment if violation of 70-day clock occurs, but has discretion to dismiss with or without prejudice).

To succeed on a claim of ineffective assistance of counsel, a petitioner must show that (1) his counsel's performance was deficient and (2) the deficient performance prejudiced his defense. *Strickland*, 466 U.S. at 687-88, 694; *Julian v. Bartley*, 495 F.3d 487, 494 (7th Cir. 2007). On appeal the parties address only the second *Strickland* prong. In his brief White makes only a passing reference to the 198 nonexcludable days he says transpired, and the government once again makes no effort to dispute White's contention that the time on the 70-day clock expired before he pleaded guilty. The government has also abandoned its contention that attorney Clark might have had "strategic reasons" for not moving to dismiss. As framed by the parties, then, this appeal turns solely on whether Clark's performance—which both parties and the district court assumed was deficient—prejudiced White.

As we have noted, however, the prejudice prong raises a novel question about the application of *Hill v. Lockhart*, which holds that a petitioner who claims that his guilty plea was induced by his lawyer's deficient performance establishes prejudice under *Strickland* by showing that he would not have pleaded guilty if properly counseled. 474 U.S. at 59; *Moore v. Bryant*,348 F.3d 238, 241 (7th Cir. 2003). The district court did not cite *Hill* when it concluded that White could not show prejudice given the probability that he would have been indicted anew even if counsel had raised a successful statutory speedy-trial claim. At oral argument the government insisted that *Hill* does not control because, in the government's view, the issue is not whether White

would have pleaded guilty but whether the outcome of the case would have been different had he moved to dismiss the indictment. But the government's position has never been tested in any court, and so we think it wise to step back and take a fresh look at a threshold question: was there a statutory violation? The district court assumed that there was a violation and thus did not analyze the specific periods of delay that, according to White, caused the 70-day limit to be exceeded. Yet our review is plenary when the calculation of time is at issue, *United States v. Parker*, 508 F.3d 434, 438 (7th Cir. 2007), and since the district court made no factual findings that would affect the outcome, we may decide the statutory question ourselves, *see id.*; *United States v. King*, 338 F.3d 795, 797 (7th Cir. 2003).

Despite the unusual lapse of time between White's indictment and his guilty pleas, a speedy-trial violation did not occur. The first period White challenges—the five days from March 1, 2002, through March 5, 2002—was excludable because White had been adjudicated incompetent and committed for treatment. *See* 18 U.S.C. § 3161(h)(4); *United States v. Neville*, 82 F.3d 750, 763 (7th Cir. 1996). The second period—the thirteen days from May 2, 2002, through May 14, 2002—was excludable for the same reason. It does not matter that the trial court never realized that these periods were excludable under subsection (h)(4) and thus tried to exclude them by means of a subsection (h)(8) continuance; the exclusions under subsections (h)(1) through (h)(7) apply automatically. *See Henderson v. United States*, 476 U.S. 321, 327, 332 (1986); *United States v. Montoya*, 827 F.2d 143, 150-151 (7th Cir. 1987); *United States v. Vasquez*, 918 F.2d 329, 333 (2d Cir. 1990). The third period—the 92 days from August 13, 2002, through November 12, 2002—was excludable at least with respect to the 60 days when White was back at the Federal Medical Center for an examination to determine his sanity at the time of the offenses. *See* 18 U.S.C. § 3161(h)(1)(A); *United States v. Barnett*, 968 F.2d 1189, 1191 (11th Cir. 1992); *United States v. Stone*, 813 F.2d 1536, 1539 (9th Cir. 1987); *United States v. Stockwell*, 743 F.2d 123, 128 (2d Cir. 1984); *United States v. Crosby*, 713 F.2d 1066, 1078 (5th Cir. 1983). It is unclear whether the remaining days were excludable, due to the absence of transcripts from the record. Finally, the fourth period—the 88 days from January 9, 2003, through April 6, 2003, when the district court entered an improper *nunc pro tunc* continuance order—was independently excludable because it occurred while White's pro se motion for new counsel was pending. *See* 18 U.S.C. § 3161(h)(1)(F); *United States v. Ruth*, 65 F.3d 599, 606 (7th Cir. 1995) (holding that delay attributable to pro se motions, including defendant's motion to discharge appointed counsel and represent himself, was excluded from 70-day calculation); *United States v. Brock*, 782 F.2d 1442, 1448 (7th Cir. 1986) (excluding period of time during which counsel's motion to withdraw was pending); *United States v. Clark*, 807 F.2d 412, 414 & n.3 (5th Cir. 1986) (holding that

counseled defendant's pro se motion to rescind order of pretrial detention triggered exclusion of time); *see also Henderson*, 476 U.S. at 330; *United States v. Piasecki*, 969 F.2d 494, 500 (7th Cir. 1992) ("Once a [pretrial] motion is filed or the period for preparing the motion has expired, the excludable delay continues until the court holds a hearing and/or until the submissions necessary for the court to reach a decision are complete.").

White never challenged any other period of delay beyond the ones we have listed, so even if we count as nonexcludable the 32 days after the Federal Medical Center issued the results of his sanity evaluation, he still comes up far short of establishing that the 70-day clock ran before he pleaded guilty. And while the government has conceded the speedy-trial question by focusing exclusively on the issue of prejudice, we need not defer to the government's legal analysis. *See, e.g., United States v. Demaree*, 459 F.3d 791, 793 (7th Cir. 2006); *United States v. Wilson*, 237 F.3d 827, 833 (7th Cir. 2001). We hold that White failed to sustain his burden of proving that a speedy-trial violation occurred. *See* 18 U.S.C. § 3162(a)(2); *United States v. Carreon*, 626 F.2d 528, 533 (7th Cir. 1980). It is true that White experienced delays during his competency and sanity examinations that apparently exceeded the time limits built into the statute authorizing those examinations. *See* 18 U.S.C. §§ 4247(b), 4241, 4242. White's competency evaluation took about 170 days to complete after it was ordered, and the sanity evaluation took approximately 110 days. But there is no sanction for exceeding the time limits in § 4247(b), and we have declined to incorporate the time limits from that statute into the Speedy Trial Act, which sets no limit on the period that is excluded for competency or other mental evaluations. *See United States v. Fuller*, 86 F.3d 105, 106-07 (7th Cir. 1996); *United States v. Scott*, 784 F.2d 787, 789-90 (7th Cir. 1986). And when the 210 days that White spent in treatment to regain his competency are added to the examination periods, the total length of the criminal case is more understandable. In fact, the examinations and treatment periods account for all but about ten months of the time between the indictment and the change-of-plea hearing. It follows, then, that attorney Clark could not have been deficient in not moving to dismiss the indictment on a ground that, as it turns out, is illusory.

AFFIRMED.