In the

# United States Court of Appeals

## For the Seventh Circuit

No. 13-2145

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

GREGORY WALKER,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:11-cr-00004-3 — **Harry D. Leinenweber**, *Judge.*

ARGUED JANUARY 23, 2014 — DECIDED MARCH 25, 2014

Before POSNER and RIPPLE, *Circuit Judges*, and GILBERT, *District Judge*.*

GILBERT, *District Judge*. On January 16, 2013, a jury found Gregory Walker guilty of two counts of wire fraud in violation of 18 U.S.C. § 1343. On appeal, Walker makes the following three arguments: (1) the failure to obtain and turn

_____

* Of the Southern District of Illinois, sitting by designation.

over Walker's seized items from a previous unrelated state case constitutes a *Brady* violation and prevented Walker from presenting his theory of defense; (2) the district court erred when it refused to give Walker's proposed buyer-seller instruction to the jury; and (3) the district erred in ordering restitution. For the following reasons, we affirm the district court.

In sum, Walker was involved in a mortgage fraud scheme encompassing at least ten different loans and seven different properties in the Chicago area. Throughout the scheme, Walker served as both a fraudulent buyer and seller. He also used his then-girlfriend, co-defendant Tanya McChristion, as a straw purchaser in some transactions. With respect to the two wire fraud counts that went to trial, Walker fraudulently caused Long Beach Mortgage to loan money on two different occasions with properties located at 9023 South Kingston, Chicago, Illinois ("the Kingston property") and 277 Allegheny Street, Park Forest, Illinois ("the Park Forest property") serving as collateral.

In his role as a fraudulent buyer, Walker first obtained a fraudulent loan for the Kingston property on May 19, 2005, when he submitted a loan application through co-defendant Carol Simmons, a loan processor. Simmons prepared and submitted the loan application containing false information about Walker's employment, assets, and rental income. Thereafter, Walker sold the Kingston property to McChristion on January 31, 2006. This transaction, in Walker's role as a fraudulent seller, is the subject of Count Two. To obtain the January 2006 mortgage on the Kingston property, Simmons submitted loan applications on behalf of McChristion to Long Beach Mortgage. The application was replete with false

information regarding McChristion's assets, employment, income, and earnest money payments. Walker obtained control of a portion of the loan proceeds through a check made payable to Real Deal Construction, a company owned by Walker.

The loan for the Park Forest property, the subject of Count Three, was obtained through Walker's use of McChristion as a straw buyer. This loan was obtained in a similar manner as the Kingston property loan, wherein Simmons prepared and submitted fraudulent loan documents in McChristion's name. In addition to listing McChristion's fraudulent income information, the loan application stated the sale price was $137,000; however, at trial the seller testified the negotiated sale price was $86,000. Eventually, the loans went into default and the properties were foreclosed on. In sum, Walker's conduct relating to the ten fraudulent transactions caused an estimated $956,300 in loss to Long Beach Mortgage.

Walker's trial counsel entered his appearance in the instant case just a few weeks prior to trial. Counsel filed a motion to continue citing his need to conduct an investigation of the evidence to determine whether Walker had a *Silverthorne* claim.[1] Specifically, counsel was concerned that illegally seized material from an unrelated state case, in the possession of the South Holland Police Department, may

---

[1] In *Silverthorne*, the Supreme Court explained that "a grand jury must be denied access to plainly relevant but illegally seized papers." *United States v. Calandra*, 414 U.S. 338, 361 (1974) (citing *Silverthorne Lumber Co. v. United States*, 251 U.S. 385 (1920)).

have been used to form the basis of the instant federal case. That evidence stems from Walker's 2006 arrest by Secret Service and others for possession of a gun. During that arrest, law enforcement seized property from Walker's home, including third parties' state identification cards, social security numbers, and credit histories; electronic storage devices; and documents and ledgers. The state court held that the search was in violation of Walker's Fourth Amendment rights and suppressed the evidence in his state case.

Throughout the district court proceedings, the government maintained that its evidence for the instant case came from lenders, title companies, financial institutions and eyewitness testimony, not from the 2006 state search. It further maintained that the only investigating agency was Housing and Urban Development, not the Secret Service.

During an October 17, 2012, hearing on Walker's motion for return of a subpoena directed at the South Holland Police Department, the district court clarified the information sought by Walker. Specifically, defense counsel said, "All I'm asking for is disclosure from the police as to what they did with this stuff," and "I want to know what they did with the stuff. That's all, what the police did with the stuff." Defense counsel further explained that he was no longer seeking production of the seized property because "it would be a little unwise for a criminal attorney to ask for evidence of crimes that he wasn't charged with." Defense counsel then clarified that his request was in the alternative, and he was alternatively requesting, pursuant to *Brady*, "a disclosure as to what the Federal Government or the state authorities" did with the seized property.

The district court directed the government to inquire as to the status and location of the seized 2006 property. As such, the government filed a status report on October 24, 2012, detailing its contact with the South Holland Police Department. Specifically, the government found that the seized property was still in the South Holland Police Department's possession and no one had made a claim to the seized property since the 2006 seizure. The government further informed the district court that the South Holland Police Department affirmed it had no connection with or knowledge of the instant federal case. Thereafter, Walker did not attempt to obtain the evidence in the custody of the South Holland Police Department and proceeded to trial.

At the jury instruction conference, Walker proposed the following buyer-seller instruction:

> The existence of a simpler buyer-seller relationship between a defendant and another person, without more, is not sufficient to establish a criminal enterprise, even where the buyer intends to resell the property. The fact that a defendant may have bought property from another person is not sufficient without more to establish that the defendant was a member of the charged criminal enterprise.
>
> In considering whether a criminal enterprise or a simple buyer-seller relationship existed, you should consider all of the evidence, including the following factors:
>
> (1) Whether the transactions involved large quantities of property or properties;

(2) Whether the parties had a standardized way of doing business over time;

(3) Whether the sales were on credit or on consignment;

(4) Whether the parties had a continuing relationship;

(5) Whether the seller had a financial stake in a resale by the buyer;

(6) Whether the parties had an understanding that the property or properties would be resold.

No single factor necessarily indicates by itself that a defendant was or was not engaged in a simple buyer-seller relationship.

The district court rejected Walker's proposed buyer-seller instruction.

Ultimately, the jury found Walker guilty on both Counts Two and Three of the indictment. Walker filed a motion for a new trial or judgment N.O.V. arguing there was insufficient evidence and that the court's refusal to give his buyer-seller instruction was reversible error. The district court denied the motion.

Based on an offense level of twenty-three and a criminal history category of four, Walker's sentencing guidelines range was seventy to eight-seven months' imprisonment. The district court imposed a below-guideline sentence of sixty months on each count to run concurrently. The Court further imposed a three-year term of supervised release and a $200 special assessment.

The presentence report ("PSR") recommended the Court impose restitution in the amount of $956,300 to compensate Long Beach mortgage for its losses. The Government's Version of the Offense put forth the methodology by which the government calculated the loss amount. The loss amounts for the various properties were obtained by subtracting the sale price the victim-lender received after recovering possession of the property from the amount of the fraudulent loan. Walker objected to the PSR's restitution amount only to the extent that he stated it was unfair to impose restitution in an amount representing losses caused by others in the scheme and that the evidence showed that Walker had made payments on the mortgages for properties he purchased. Walker did not, however, object to or present evidence contrary to the loss calculations contained in the PSR. The district court adopted the PSR's actual loss calculation of $956,300 and ordered restitution joint and several with Walker's co-defendants.

We will now consider each of Walker's arguments in turn.

1. *Brady* Violation

First, Walker argues a *Brady* violation stemming from the government's failure to provide him with the South Holland Police Department evidence. He further argues this alleged *Brady* violation prevented him from presenting his theory of defense because the evidence in question contained evidence relevant to his defense. We review a district court's denial of a motion for a new trial based on a *Brady* violation for abuse of discretion. *United States v. Wilson*, 237 F.3d 827, 831–32 (7th Cir. 2001). Where a defendant fails to preserve a *Brady* violation claim before the district court, we review for plain

error. *United States v. Mota*, 685 F.3d 644, 648 (7th Cir. 2012). "That means that 'the alleged *Brady* violation must be an obvious error that affected [the defendant's] substantial rights and created a substantial risk of convicting an innocent person." *Id.* (quoting *United States v. Daniel*, 576 F.3d 772, 774 (7th Cir. 2009)) (internal quotations omitted).

Here, Walker made it clear to the district court that he simply wanted to know "what the police did with the stuff" and the government satisfied that request when it found that the evidence was still at the South Holland Police Department. After receipt of that information, Walker no longer pursued the evidence at issue. Accordingly, it is appropriate to review Walker's *Brady* claim for plain error. However, Walker's claim fails under either plain-error or abuse-of-discretion review.

*Brady* explained that failure to disclose favorable evidence upon a defendant's request "violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). To succeed on a *Brady* claim, Walker bears the burden of proving that the evidence is "(1) favorable, (2) suppressed, and (3) material to the defense." *United States v. Wilson,* 237 F.3d 827, 832 (7th Cir. 2001). The government's duty to disclose favorable evidence extends beyond evidence in its immediate possession to evidence in the possession of other actors assisting the government in its investigation. *Fields v. Wharrie*, 672 F.3d 505, 513 (7th Cir. 2012). However, even if the government failed to disclose material evidence, the evidence is not "suppressed" if the defendant knew of the evidence and could have obtained it through the exercise of reasonable

diligence. *United States v. Dimas*, 3 F.3d 1015, 1018–19 (7th Cir. 1993).

Walker fails to establish a *Brady* violation for two reasons. First, the evidence suppressed in the state case was not in the control of the government or any actors assisting the government in its federal investigation. While Walker has repeatedly contended that the suppressed evidence was in some way connected to the instant federal prosecution, Walker has failed to show that the government or any actors assisting the government in its investigation had any access to or knowledge of the suppressed evidence. To the contrary, the government repeatedly denied any knowledge of the suppressed evidence. The government further explained that the sole investigating agency involved in the instant investigation was Housing and Urban Development, and the South Holland Police Department reported it had no knowledge of the instant case. As such, Walker fails to establish that the government suppressed any evidence in violation of *Brady*.

Second, Walker failed to exercise reasonable diligence in obtaining the suppressed evidence from the South Holland Police Department. As was made clear at oral argument, Walker never even asked the South Department Police Department to provide him with the evidence. At a minimum, Walker would have to ask for law enforcement to turn over his property before he can claim he has made a reasonably diligent effort to obtain it. Accordingly, the South Holland Police Department evidence was not suppressed within the meaning of *Brady*.

To the extent Walker argues he was denied due process when the district court failed to issue a subpoena for the South Holland Police Department evidence, his claim fails.

Walker's counsel ultimately withdrew his request to obtain the evidence. Instead, he sought simply to learn the location of the evidence. This move was indeed a strategic move by counsel as he acknowledged before the district court "it would be a little unwise for a criminal attorney to ask for evidence of crimes that he wasn't charged with." As such, Walker waived any due process claim involving the district court's failure to issue a subpoena for the South Holland Police Department evidence.

2. Proposed Buyer-Seller Instruction

Next, Walker argues he was denied an opportunity to present his theory of defense when the district court refused to give his proposed buyer-seller jury instruction. While Walker did not go to trial on the conspiracy charge, the government still argued Walker was involved in a scheme to defraud. Walker contends he was entitled to his proposed buyer-seller instruction, an instruction given in a conspiracy context, because the scheme theory relies on conspiracy concepts. We review a district court's refusal to give a requested theory-of-defense jury instruction *de novo*. *United States v. Choiniere*, 517 F.3d 967, 970 (7th Cir. 2008).

Defendants are not automatically entitled to any particular theory-of-defense jury instruction. *Id*. A defendant is only entitled to a jury instruction that encompasses his theory of defense if "(1) the instruction represents an accurate statement of the law; (2) the instruction reflects a theory that is supported by the evidence; (3) the instruction reflects a theory which is not already part of the charge; and (4) the failure to include the instruction would deny the [defendant] a fair trial." *United States v. Swanquist*, 161 F.3d 1064, 1075 (7th Cir. 1998).

As indicated in the Committee Comment to the buyer-seller instruction contained in the Seventh Circuit Pattern Jury Instruction, "[t]his instruction should be used only in cases in which a jury reasonably could find that there was only a buyer-seller relationship rather than a conspiracy." This makes sense. To prove a conspiracy, the government must prove more than a buyer-seller agreement. *United States v. Gee*, 226 F.3d 885, 893–94 (7th Cir. 2000). Specifically, a conspiracy "is an agreement with a particular kind of object—an agreement to commit a crime … . What is required for conspiracy in such a case is an agreement to commit some other crime beyond the crime constituted by the agreement itself." *United States v. Lechuga*, 994 F.2d 346, 349 (7th Cir. 1993). Accordingly, a mere buyer-seller relationship provides a defense to a conspiracy charge because it negates an essential element, the agreement to commit a crime, of a conspiracy. *See United States v. Turner*, 93 F.3d 276, 285 (7th Cir. 1996) (In the context of a drug conspiracy charge, "[t]he purpose of the 'mere buyer-seller instruction' is to ensure that the jury understands that an agreement to purchase the contraband, without any other agreement to achieve another criminal objective, is not a conspiracy.")

The buyer-seller instruction, however, does not provide a defense to an element contained in a charge for wire fraud. The government must prove the following elements to convict a defendant of wire fraud: "(1) the defendant participated in a scheme to defraud; (2) the defendant intended to defraud; and (3) a use of an interstate wire in furtherance of the fraudulent scheme." *United States v. Turner*, 551 F.3d 657, 664 (7th Cir. 2008). Walker argues that the buyer-seller instruction encompasses his defense to the scheme-to-defraud element. However, "a scheme to defraud is conduct intended

or reasonably calculated to deceive a person of ordinary prudence or comprehension." *United States v. Hanson*, 41 F.3d 580, 583 (10th Cir. 1994). It does not involve an agreement with another to commit a crime. Accordingly, the existence of a mere buyer-seller relationship is not a defense to the scheme-to-defraud element of wire fraud. As such, the failure to include Walker's buyer-seller instruction did not deny Walker a fair trial and it was not error for the district court to reject that instruction.

### 3. Restitution

Finally, Walker contends the district court's restitution order was erroneous. Specifically, he alleges that the methodology employed by the district in determining restitution failed to accurately determine the amount of actual loss or the identity of the victims. We review the legality of an award of restitution *de novo* and the district court's restitution calculation for abuse of discretion. *United States v. Robers*, 698 F.3d 937, 941 (7th Cir. 2012). However, where a defendant fails to raise specific arguments regarding a restitution award in the district court, we employee plain-error review. *United States v. Berkowitz*, 732 F.3d 850, 852 (7th Cir. 2013). Under plain-error review, we will overturn the district court's restitution order only if the district court committed an error that would deprive a defendant of his substantial rights. *Id*. at 852–53.

The Mandatory Victims Restitution Act ("MVRA") provides that a district court "shall order" defendants convicted of specified offenses to "make restitution to the victim of the offense." 18 U.S.C. § 3663A(a)(1). The purpose of the MVRA is to "ensure that victims recover the full amount of their losses, but nothing more." *United States v. Newman*, 144 F.3d

531, 542 (7th Cir. 1998). Where the crime involves "damage to or loss or destruction of property of a victim of the offense" the restitution order must order the defendant to

> (A) return the property to the owner of the property or someone designated by the owner; or
>
> (B) if return of the property under subparagraph (A) is impossible, impracticable, or inadequate, pay an amount equal to —
>
> > (i) the greater of —
> >
> > > (I) the value of the property on the date of the damage, loss, or destruction; or
> > >
> > > (II) the value of the property on the date of sentencing, less
> >
> > (ii) the value (as of the date the property is returned) of any part of the property that is returned.

18 U.S.C. § 3663A(b)(1). Loss in mortgage fraud cases is determined by "subtract[ing] the sale price the lender received after it recovered possession of the property from the amount of its original loan … ." *United States v. Green*, 648 F.3d 569 (7th Cir. 2011).

The district court may adopt the actual loss amount contained in the PSR. *United States v. Berkowitz*, 732 F.3d 850, 853–54 (7th Cir. 2013). When the district court opts to adopt the PSR's restitution calculation, the burden then falls on the defendant to demonstrate the amount is unreliable. *Id*. "When a defendant has failed to produce any evidence call-

ing the report's accuracy into question a district court may rely entirely on the PSR." *United States v. Taylor*, 72 F.3d 533, 543 (7th Cir. 1995).

Here, Walker failed to object at sentencing to the PSR's restitution amount or victim identification. As such, the district court's restitution order is subject to plain-error review. Walker failed to produce any evidence contradicting either the PSR's restitution amount or methodology. Rather, it appears that the government's proposed loss amount used the appropriate calculation by subtracting the sale price after Long Beach Mortgage recovered the property from the amount of the loan. As such, the district court did not commit plain error in relying entirely on the restitution amounts contained in the PSR to which Walker did not object.

Finally, Walker argues the court improperly failed to inquire into the identity of the victims. Specifically, Walker argues that the district court improperly relied on the government's identification of the victim as Long Beach Mortgage when property records reflect that at least two of the properties were foreclosed on by lenders other than Long Beach Mortgage. Walker, however, failed to make any objection to the identification of the victim at trial and fails to provide any indication that Long Beach Mortgage was not the victim. Indeed, Walker does not argue that Long Beach Mortgage did not make the loans to him. Rather, he simply argues that Long Beach Mortgage did not initiate the foreclosure process.[2] As such, the court did not err in adopting the identifi-

---

[2] It does not surprise us that Long Beach Mortgage did not initiate the foreclosure process. Long Beach Mortgage and its owner, Washington Mutual, collapsed prior to the referenced foreclosure proceedings. *See*

cation of the victim contained in the PSR to which Walker did not object.

The judgment of the district court is AFFIRMED.

---

Huffington Post, http://www.huffingtonpost.com/2009/12/21/at-long-beach-mortgage-a_n_399295.html (last visited March 13, 2014).